IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT JOSEPH KING               :

    v.                          :   Civil Action No. DKC 16-3804

DENNIS SCHRADER,[1] et al.        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are a motion to substitute parties filed by Plaintiff Robert King ("Plaintiff") (ECF No. 7), and a motion to dismiss filed by Defendants Dennis Schrader, John Robison, Thomas Lewis, Inna Taller, Aram Faramarz Mokhtari Aria, Wayne Noble, and Chandra Wiggins ("Defendants"). (ECF No. 8). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted, and the motion to substitute parties will be denied as moot.

---

[1] On July 1, 2017, Dennis Schrader became the Acting Secretary of the Maryland Department of Health and is substituted as the proper defendant pursuant to Fed.R.Civ.P.25(d).

**I. Background**

   **A. Factual Background[2]**

Plaintiff is a patient at Clifton T. Perkins Hospital Center ("Perkins"), a psychiatric hospital operated by the Maryland Department of Health. (ECF No. 1 Parties, ¶ 2).[3] Perkins operates a work adjustment program ("WAP") which places patients at jobs and pays them the current minimum wage of $8.75 per hour. (Statement of Facts, ¶ 2).

On March 18, 2016, Plaintiff filed a grievance with Perkins stating that he "had waited for seven or eight months" without receiving a job from WAP and alleging that he "was, for some reason, being discriminated against." (Statement of Facts, ¶ 3). On March 29, Defendant Noble, a member of Plaintiff's treatment team, responded to the grievance and explained that Plaintiff had not received a job placement because Plaintiff was

---

[2] Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiff. Although the complaint refers to purportedly attached exhibits, the document originally submitted by Plaintiff to the court did not contain any attached exhibits. Because Defendants referred to those exhibits in their papers, the court assumed that the copy of the complaint served on them did contain the exhibits, and so counsel were directed to provide copies to the court. Defendants did so in ECF No. 23. Plaintiff takes issue with some of those attachments and provided the court with the versions he contends are correct. (ECF No. 25.)

[3] The complaint begins numbering the paragraphs in each section with number 1. Thus, the name of the section as well as the number of the paragraph will be provided.

struggling to control his behavior and his treatment team did not believe placing him in a job would help his recovery. (Statement of Facts, ¶ 5). At that time, Noble said the treatment team determined the best course of action would be to wait for Plaintiff to show a better ability to "manage his anger and frustration" before placing him in a job. (*Id.*).

On April 5, Defendant Wiggins, an employee of WAP, told Plaintiff he had been placed in a job with the horticulture program. (Statement of Facts, ¶ 6). The two discussed Plaintiff's schedule and when he would be available to work. Wiggins informed Plaintiff that he would also need to speak with Carol Adams, the program supervisor. (*Id.*). The next day Ms. Adams and Plaintiff met, and Ms. Adams informed Plaintiff that he would need a doctor's note to participate in the program due to his urinary incontinence. (Statement of Facts, ¶ 7).

On April 7, Plaintiff met with his treatment team, and they informed him that he would be limited to five hours of work per week and that if his disabilities interfered with the job, then he would not be allowed to work. (Statement of Facts, ¶ 10). On April 12, however, Wiggins told Plaintiff that he would "not be working in Horticulture." (Statement of Facts, ¶ 16). She explained that the treatment team did not believe the horticulture program was an appropriate placement for Plaintiff.

3

(*Id.*).  Wiggins offered Plaintiff a job in Perkins' canteen. (ECF No. 25-7).[4]

**B.  Procedural History**

In mid-April 2016, Plaintiff filed a grievance alleging that he was being denied an opportunity to work because of his disability.  (ECF No. 25-8, at 2-3).[5]  Perkins denied the grievance.  On August 7, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  (Statement of Facts, ¶ 21).  On August 31, the EEOC dismissed his complaint and issued a right to sue notice.  (Statement of Facts, ¶ 22).

On November 21, Plaintiff brought this action against Defendants, a variety of Perkins' officials and the then-Secretary of the Maryland Department of Health and Mental Hygiene, in their individual and official capacities.  He alleged they violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, because: (1) they terminated his job in the horticulture program due to his urinary incontinence; (2) they refused to offer a reasonable

---

[4] Ms. Wiggins states that Plaintiff accepted the canteen position.  Plaintiff's complaint is unclear about whether he accepted the canteen position.  The complaint does note that there would be a similar lack of restroom access there.  (ECF No. 1, Statement of Facts, ¶ 25).  In a later filing, Plaintiff asserts that he worked in the canteen for one day.  (ECF No. 10-1, at 5).

[5] The grievance also alleged retaliation for filing a previous grievance.  (ECF No. 25-8, at 2-3).  Plaintiff did not allege retaliation before this court.

accommodation (access to restroom facilities) that would allow him to work in the horticulture program; and (3) they refused to hire him to work elsewhere in Perkins (other than horticulture or the canteen) because of his disability. (ECF No. 1, Federal Questions, ¶¶ 1-3). Plaintiff sought compensatory and punitive damages, declaratory and injunctive relief, and his release from Perkins. (*Id.*). On January 9, Plaintiff moved to substitute Dennis Schrader, the then-Secretary of the Maryland Department of Health and Human Hygiene, for Van T. Mitchell, the former Secretary of the Maryland Department of Health and Human Hygiene. (ECF No. 7).

On January 31, 2017, Defendants moved to dismiss for failure to state a claim. (ECF No. 8). Plaintiff submitted his response in opposition and three supplements. (ECF Nos. 10; 13; 14; 16). Defendants replied. (ECF No. 12.)

**II. Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3

5

(2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

*Pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is

possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). That is, even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) ("[E]ven a *pro se* complaint must be dismissed if it does not allege a plausible claim for relief." (citation and internal quotation marks omitted)).

**III. Analysis**

    **A. Motion to Substitute Parties**

Plaintiff moved to substitute Dennis Schrader for Van T. Mitchell because, at that time, Dennis Schrader was the Secretary for the Maryland Department of Health and Mental Hygiene. Since the motion to substitute parties was filed, the Maryland legislature changed the name of the Department of Health and Mental Hygiene to the Department of Health, "Department of Health and Mental Hygiene – Renaming," 2017 Maryland Laws Ch. 214 (S.B. 82), and Dennis Schrader's position has changed from Secretary to Acting Secretary. *Dennis R. Schrader*, Maryland Department of Health, http://msa.maryland.gov/msa/mdmanual/16dhmh/html/msa14162.html

7

(last visited Aug. 25, 2017). As such, Plaintiff's motion to substitute parties is denied as moot. Nevertheless, pursuant to Fed.R.Civ.P. 25(d), Dennis Schrader is substituted in his capacity as Acting Secretary of the Maryland Department of Health.

**B. Motion to Dismiss**

**1. Individual Capacity Claims**

Plaintiff brings ADA claims against Defendants in their individual capacities. (ECF No. 1, at 3). These claims will be dismissed because "the ADA does not authorize suit against individuals for violating its provisions." *Altevorgt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *5 (D.Md. Jan. 13, 2012); *Jones v. Sternheimer*, 387 F.App'x 366, 368 (4th Cir. 2010) ("Title VII, the ADA, and the ADEA . . . do not provide for causes of action against defendants in their individual capacities."); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999).

**2. Official Capacity Claims - Damages**

Plaintiff's complaint seeks compensatory and punitive damages against Defendants in their official capacities. (ECF No. 1, at 4). Official capacity claims are properly construed as "a suit against the official's office" and as such are "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). For a suit to

proceed against a state, either the state must have consented to being sued or Congress must have validly abrogated the states' Eleventh Amendment immunity. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Maryland did not consent to suits under the ADA. *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014).

In enacting the ADA, Congress validly abrogated states' immunity for claims brought under Title II of the ADA but not for claims brought under Title I. *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004); *Bd. of Trs. of Univ. of Al. v. Garrett*, 531 U.S. 356, 360 (2001). Title I of the ADA prohibits employment discrimination whereas Title II prohibits discrimination in the provision of public services. 42 U.S.C. §§ 12112, 12132. Plaintiff does not identify explicitly the Title of the ADA he claims was violated, but he and Defendants refer exclusively to employment issues. If the claim is employment based, Plaintiff cannot rely on Title II. *See Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 420-21 (4th Cir. 2015).

Although there is a dearth of precedent addressing whether a patient committed to a state mental hospital performing work in or through the hospital is an employee for the purposes of the ADA, many courts have examined whether prisoners performing work in or through the prison are employees for the purposes of

9

related employment rights statutes.[6] Courts have stated generally that prisoners working directly for a prison pursuant to a state law requiring them to work are not employees protected under employment rights statutes, but may be entitled to employee protections when work is optional and done for economic reasons. *See Moyo v. Gomez*, 32 F.3d 1382, 1385 (9th Cir. 1994), *amended*, 40 F.3d 982 (9th Cir. 1994) ("[I]nmates performing work assignments that include compensation or training, or that resemble work release rather than forced labor, are employees entitled to Title VII protection."); *Watson v. Graves*, 909 F.2d 1549, 1554-56 (5th Cir. 1990) (concluding that inmates who worked for the sheriff in an unauthorized work release program and not as part of their sentence were employees for the purposes of the Fair Labor Standards Act ("FLSA")). In these situations, there is a "'bargained-for exchange of labor' for mutual economic gain that occurs in a true employer-employee relationship." *Harker v. State Use Industries*, 990 F.2d 131, 133 (4th Cir. 1993).

On the other hand, when work is part of a punishment or done for rehabilitative purposes, a prisoner does not establish an employer-employee relationship. *See Castle v. Eurofresh,*

---

[6] Statutory definitions are sufficiently similar under the ADA, Title VII, and the ADEA that courts can rely on cases arising under any. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012).

*Inc.*, 731 F.3d 901, 907 (9th Cir. 2013) (holding that a prison inmate was not an employee for the purposes of Title I of the ADA because the inmate was obligated to work as a condition of his confinement); *Harker*, 990 F.2d at 133 (holding a prison inmate working in a prison shop was not an employee under FLSA because the work was performed "as a means for rehabilitation and job training."); *Williams v. Mease*, 926 F.2d 994, 997 (10th Cir. 1991) (concluding a prisoner did not have rights as an employee under the Age Discrimination in Employment Act ("ADEA") or Title VII because his relationship with the prison "[arose] out of his status as an inmate, not an employee."). Indeed, in situations where a prison work program serves rehabilitative and educational purposes, refusing to allow a prisoner to participate because of a disability could be a Title II violation. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

Similarly, a patient working in a mental hospital is an employee when the patient can choose whether to work and performs the work for economic gain. *See McCaslin v. Cornhusker State Indus.*, 952 F. Supp. 652, 655-57 (D. Neb. 1996) (collecting cases concerning whether prisoners were entitled to employee protections). In this case, according to the allegations in the complaint, participation in WAP is not mandatory, and not all patients are able to participate. Those who do participate receive minimum wage. The complaint contains

11

no allegations that WAP provided educational or vocational opportunities. Although not alleged in the complaint, Plaintiff asserts that the State of Maryland considers WAP participants "contractual employees." (ECF No. 10-1, at 5). Because WAP does not provide educational or rehabilitative services and instead provides an opportunity to work for patients who choose to do so, a patient performing work through WAP is an employee for purposes of Title I. *See Baker v. McNeil Island Corr. Ctr.*, 859 F.2d 124, 128 (9th Cir. 1988) (finding an inmate could be an employee if the job was optional and not required as part of his sentence). Plaintiff's complaint thus raises a claim of disability discrimination in violation of Title I of the ADA. *See* § 12112(b)(5)(B).

Because Congress did not abrogate the states' Eleventh Amendment immunities for suits under Title I, Plaintiff cannot recover damages, either compensatory or punitive, and his claim for monetary relief must be dismissed. *See Bd. of Trs. of Univ. of Al.*, 531 U.S. at 360.

### 3. Declaratory Relief

Plaintiff requests a "declaratory judgment" but does not specify what the judgment should say. (ECF No. 1, at 24). A complaint "requires more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555. The complaint must contain "sufficient facts under a cognizable legal theory." *Jarallah v.*

*Thompson*, 123 F.Supp.3d 719, 729 (D.Md. 2015). Courts are not "required to construct a party's legal argument for him." *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993). In this case, the complaint would require judicial reconstruction plausibly to state a claim for declaratory relief, and, therefore, it must be dismissed.[7]

### 4. Injunctive Relief

While a suit for damages is foreclosed, a private person may still seek injunctive relief under Title I of the ADA. *Garrett*, 531 U.S. at 374, n. 9. Even if Plaintiff has stated an ADA claim,[8] he has not stated a sufficient claim for injunctive relief. Plaintiff's complaint broadly requests "[i]njunctive relief" but does not specify the type of injunction sought (ECF No. 1, at 24). (He also separately seeks release from Perkins, which will be discussed in the next section.) In construing pro se complaints, "[d]istrict judges are not mind readers. Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments[.]"

---

[7] Even if the complaint were read to request a declaration related to the alleged ADA violations, sovereign immunity prevents a declaration that state officials "violated federal law in the past[.]" *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see Green v. Mansour*, 474 U.S. 64, 73 (1985). Thus, Plaintiff's request for declaratory relief would still be dismissed.

[8] Defendants argue that Plaintiff has not and cannot state a viable claim under the ADA. The court need not address those arguments at this time.

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Plaintiff has not specified the injunction he seeks or the behavior he wants enjoined, or why any such relief would be available under the ADA. Without this information, Plaintiff's complaint does not state a cognizable claim for injunctive relief. It is not at all clear that, absent the availability of money damages or unconditional release, Plaintiff would seek to pursue an ADA claim. Out of an abundance of caution, Plaintiff will be given a brief period to amend the complaint, if he wishes to pursue the limited type of injunctive relief that may be sought.

> **5. Unconditional Release**

Plaintiff requests his unconditional release from Perkins. Plaintiff's complaint contains no facts explaining why his release from Perkins is necessary or how it relates to his ADA claims. In his response to Defendants' motion to dismiss, Plaintiff suggests his relief could be a judicial remedy pursuant to Section 3-119 of the Maryland Criminal Procedure Article (ECF No. 10-1, at 13), but Section 3-119 only governs the method of applying for a release. The standard for release is that a person would not be a "danger . . . to self or to the person or property of others if discharged." Md.Code Ann., Crim. Pro. § 3-114. His pleading contains no facts that relate

to this standard, and, therefore, his request for an unconditional release is dismissed.

### 6. Attorney's Fees

The ADA allows a prevailing party to receive reasonable fees. 42 U.S.C. § 12205. Plaintiff is not a prevailing party and is therefore not entitled to Attorney's fees. *See* § 12205; *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

## IV. Conclusion

For the foregoing reasons, the motion to substitute parties filed by Plaintiff will be denied, (ECF No. 7), and the motion to dismiss filed by Defendants will be granted. A separate order will follow.

　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　DEBORAH K. CHASANOW
　　　　　　　　　　　　　　　　　　United States District Judge